LAFAYETTE BANK & TRUST CO., Administrator of the Estate of Rodger Keener, Plaintiff-Appellant,

v.

Donald L. PRICE, Indianapolis Baptist Temple, and Baptist Bible Fellowship International, Defendants-Appellees.

No. 1–382A62.

Court of Appeals of Indiana, First District.

Oct. 19, 1982.

Ronald L. Sowers, Ronald E. James, Sowers & Benson, Fort Wayne, Mike Eidson, Colson, Hicks & Eidson, Miami, Fla., for plaintiff-appellant.

Gregory S. Carter, Patrick, Gabbert, Wilkinson, Goeller & Modesitt, Terre Haute, for defendant-appellee, Baptist Bible Fellowship International.

RATLIFF, Presiding Judge.

## STATEMENT OF CASE

Lafayette Bank & Trust Company, Administrator of the Estate of Rodger Keener, appeals from summary judgment granted in favor of the Baptist Bible Fellowship International. We affirm.

## FACTS

The Fellowship is a not-for-profit corporation with headquarters in Springfield, Missouri, whose primary purpose is promoting fellowship among Baptists. The group selected Indianapolis, home of the independent Indianapolis Baptist Temple, as the site of its annual meeting in 1976. Doctor Greg Dixon, head of the Temple, invited various missions and vendors to attend the meeting and set up display booths. Booth space was provided upon a $25.00 donation to the Baptist Bible Tribune, a publication of the Fellowship. Of the twenty-four spaces rented, the Temple paid for seven and Robert Crist, d/b/a Superior Coach Sales, paid for one. Crist, whose bus business was located in Perrysville, Indiana,

had sold numerous buses to the Temple on a not-for-profit basis for use in the Temple's bus ministry. Rodger Keener, pastor of the Spanish Fort Bible Baptist Church in Alabama was looking for a bus for his church's bus ministry. Don Price, incorporated as "Don Price Evangelistic Association," was at that time a former member and a part-time consultant to the Temple and a member and part-time employee of Keener's church. He suggested that Keener seek information about a bus from Crist. Price had driven Keener and his wife and daughter to Indianapolis for the convention and then rented a Cessna 182 from Skyway Airport on September 29, 1976, to fly Crist and Keener, at the latter's request, to Highland Airport near Crist's business in Perrysville. During landing, the plane went off the end of the runway, crashed, burned, and Rodger Keener was killed.

Keener's estate brought a wrongful death action against Price and Skyway Airport, later adding the Crists, the Temple, and the Fellowship on theories of agency and joint venture. The claim against Skyway has been severed. Motions for summary judgment have been filed by the Crists, the Temple, and the Fellowship. The trial court granted summary judgment in favor of Crist and the Fellowship upon finding that "[t]here is no genuine issue of material fact in respect to the facts relevant to the issues of whether defendant Price was an agent of defendant Baptist Bible Fellowship International or whether defendant Price and defendant Baptist Bible Fellowship International were engaged in a joint enterprise." Record at 1184–87. The trial court, however, denied the Temple's motion for summary judgment. Keener's estate appeals.

## ISSUE

Did the trial court err as a matter of law in finding that there was no genuine issue of material fact respecting the Fellowship's liability under either an agency or joint venture theory?

## DISCUSSION AND DECISION

Keener's estate contends that the court erred in granting summary judgment in favor of the Fellowship because the facts in this case could support an inference that "the co-defendants, Baptist Bible Fellowship International and Indianapolis Baptist Temple clearly joined in a joint venture or principal-agent relationship to conduct an Annual Meeting and hold sales activities at the Indianapolis Baptist Temple facility." Appellant's brief at 12. We disagree.

 Even if we accept, for the sake of argument, that the evidence in this case could support an inference of an agency relationship between the Temple and Price, thus constituting a genuine issue of material fact on that matter, evidence relating to the relationship between Price and the Fellowship or the Fellowship and the Temple is too tenuous to support even an inference of either agency or joint venture. We do not agree with Keener's estate that an inference of a possible agency relationship between the Temple and Price will support the further inference of an agency relationship between the Fellowship and Price. "An inference cannot arise or stand by itself. There must first be a fact established from which an inference arises. *Prudential Insurance Co. v. VanWey,* (1945) 223 Ind. 198, 204, 59 N.E.2d 721, 725." *Palace Bar, Inc. v. Fearnot,* (1978) 269 Ind. 405, 409, 381 N.E.2d 858, 861. "[A] party against whom a motion for summary judgment is made need not divulge his entire case ... [but] he must come forth with specific facts which show that there is a genuine issue for trial." *Moll v. South Central Solar Systems, Inc.,* (1981) Ind.App., 419 N.E.2d 154, 160. *Accord Warrick Hospital, Inc. v. Wallace,* (1982) Ind.App., 435 N.E.2d 263, 269 (transfer pending). This court subscribes to the Restatement's definition of agency:

"'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' Restatement of the Law of Agency, Vol. 1, § 1, p. 7. Also see: *Department*

*of Treasury v. Ice Service, Inc.* (1942), 220 Ind. 64, 41 N.E.2d 201; *Lincoln Nat. Bank & Trust Co. v. Parker* (1941), 110 Ind.App. 1, 34 N.E.2d 190, 37 N.E.2d 5." *Minniear v. Estate of Metcalf,* (1972) 153 Ind.App. 213, 215, 286 N.E.2d 700, 702, *trans. denied.* We find no evidence in the record of Price's acting on behalf of the Fellowship in bringing Keener and Crist together or of any control by the Fellowship over the trip to Perrysville. Keener's estate has presented no facts supporting an inference of either an actual or an implied agency existing between the Fellowship and Price. We reach the same conclusion with respect to the joint venture contention.

The concept of joint venture has deep historical roots in the world of commerce, but as a legal theory, it is a relatively recent creation of American courts. *See Davis v. Webster,* (1964) 136 Ind.App. 286, 198 N.E.2d 883; Jeager, *Partnership or Joint Venture?* 37 Notre Dame Law. 138 (1961); 2 S. Williston, *A Treatise on the Law of Contracts* § 318 (3d ed. 1959); 46 Am.Jur.2d *Joint Ventures,* § 1 (1969). Indiana courts have consistently preserved the commercial flavor of the joint venture concept, defining it as "an association of two or more persons to carry out a single business enterprise for profit." *Beck v. Indiana Surveying Co.,* (1981) Ind.App., 429 N.E.2d 264, 268; *Baker v. Billingsley,* (1956) 126 Ind. App. 703, 708, 132 N.E.2d 273, 275–76, *trans. denied;* 17 I.L.E. *Joint Adventures* § 1, 51 (1959). It is distinguished from a partnership only "in that a partnership is formed for the general business of a particular kind whereas the joint venture contemplates a single business transaction." *Beck,* 429 N.E.2d at 268. Indiana case law recognizes other elements necessary to and inherent in the definition of joint venture set out above. For example, it should be noted that a joint venture will arise only by contract. *Oppenheimer v. Craft,* (1961) 132 Ind.App. 452, 466, 175 N.E.2d 715, 722, *trans. denied; Spencer v. Pettibone,* (1947) 117 Ind.App. 426, 430, 70 N.E.2d 439, 441, *trans. denied.* The contract may be either express or implied from conduct, *id.,* but it

may not arise by operation of law. 17 I.L.E. *Joint Adventures* § 2, 53 (1959); 46 Am.Jur.2d *Joint Ventures* § 8, 29 (1960). Also, in the seminal Indiana case on joint venture, *Baker v. Billingsley,* it was established that nothing need be said about losses involving only time or labor, but an agreement to share profits is necessary and that "a right of mutual control over the subject matter of the enterprise or over the property engaged therein is essential to a joint adventure." 126 Ind.App. at 708, 132 N.E.2d at 276. *See also, O'Hara v. Architects Hartung and Associates,* (1975) 163 Ind.App. 661, 665, 326 N.E.2d 283, 286. Finally, as in a partnership, with respect to third parties, each party is an agent of the others. *O'Hara.*

In the instant case, Keener's estate asserts that the Fellowship and the Temple entered into a joint agreement to put on a convention which sponsored a display of buses for sale in conjunction with promotion of the Temple's bus ministry. The estate argues that common benefits of such joint venture would include publicity which in turn would increase membership and thereby increase charitable contributions. Such a remote pecuniary interest is hardly sufficient to earn the title. We find nothing in the record to show that the parties' purpose in organizing the convention was to sell buses. In fact, we find no indication in the record that the purpose of the convention was anything other than fellowship and the strengthening of the bonds of belief among Baptists. Furthermore, the objective of the journey to Perrysville was the viewing of Crist's business with only a possibility of Keener's purchasing a bus at some unspecified time in the future for use in his church work in Alabama. There is absolutely no evidence to show that the Fellowship agreed to or knew of the trip to Perrysville to view the bus, that it would derive any pecuniary or proprietary benefit from the venture, or that it provided or exercised any control over the vehicle rented for the trip.

It is true that there exists a line of automobile negligence cases in our jurisprudence which extends the joint venture theory beyond its original commercial law context. In those cases the theory permits imputing a driver's negligence to a passenger or owner of the vehicle based upon the parties' community of interest and a fictional common ability to control the vehicle. *See* W. Prosser, *The Law of Torts,* § 72, 477–78 (4th ed. 1971) cited in *Leuck v. Goetz,* (1972) 151 Ind.App. 528, 540, 280 N.E.2d 847, 854–55, *trans. denied.* Such application of the theory has been almost universally discredited, however, unless a financial or pecuniary interest in the common objective of the journey can be discerned. *Id.* In Prosser's words,

"[I]t is generally agreed that something more is required for a joint enterprise than the mere showing of a contract or agreement to travel together to a destination for a common purpose. Something in the nature of a common business, financial or pecuniary interest in the objective of the journey is said to be essential. In this form the requirement of a mutual interest persists as a minimum in all courts, to the exclusion of all cases in which the parties are casually together for pleasure or for independent ends."

*Id.* Indiana cases have always adhered to this analysis and result. *Cf., e.g., Serna v. Kiger,* (1978) Ind.App., 372 N.E.2d 1232, reversing the trial court for giving a joint venture instruction in an automobile negligence action involving parties travelling to a state political convention because of a lack of any evidence of a pecuniary interest in the common purpose of promoting a particular political party of candidate and for lack of any evidence of real control over the operation of the vehicle by the passenger-wife, *with Hake v. Moorhead,* (1967) 140 Ind.App. 127, 222 N.E.2d 617, *trans. denied,* recognizing a joint venture in an automobile negligence case where a husband was driving to the bank for the purpose of depositing funds derived from a joint business into a joint bank account. Hence, any negligence or contributory negligence could be imputed to a passenger or owner of the vehicle only if the parties share a proprietary or pecuniary interest in the goal of the trip. *See also Leuck v. Goetz; Keck v. Pozorski,* (1963) 135 Ind.App. 192, 191 N.E.2d 325, *trans. denied.* In the absence of any showing of such joint pecuniary interest between Price and the Fellowship in the trip to Perrysville, we must agree with the trial court's finding on joint venture.

■■■ Whether a joint venture exists is generally held to be a question for the trier of fact, but what constitutes a joint venture is a question of law for the court. 46 Am.Jur.2d *Joint Ventures* § 7, 29 (1969). Where the facts are undisputed and only a single reasonable inference can be drawn therefrom, the question is one of law. *Stallings v. Dick,* (1965) 139 Ind.App. 118, 124–25, 210 N.E.2d 82, 86, *trans. denied.* In this case because we have been shown no facts which would support even an inference that the Fellowship and Price shared any pecuniary interest in the outcome of the trip or that the Fellowship exercised any control over Price, the plane, or the flight, we find that the trial court did not err as a matter of law in concluding that no joint venture existed which could support an imputation of Price's alleged negligence to the Fellowship.

Judgment affirmed.

NEAL and ROBERTSON, JJ., concur.